**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:09CV534-DSC**

| | |
|---|---|
| **REGIONS BANK d/b/a REGIONS MORTGAGE,** )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>**FAIRWAY INDEPENDENT MORTGAGE CORPORATION,** )<br>)<br>Defendant. )<br>)<br>_____ ) | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on Defendant's "Partial Motion to Dismiss ..." (document #3) filed December 21, 2009; and the parties' associated briefs and exhibits (documents ## 4, 19 and 20).

The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. §636(c), and these motions are now ripe for disposition.

Having carefully considered the parties' arguments, the record, and the applicable authority, the Court <u>grants in part</u> and <u>denies in part</u> Defendant's Motion, as discussed below.

**I. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>**

Plaintiff Regions Bank ("Regions") is a mortgage lender and Defendant Fairway Independent Mortgage Corporation ("Fairway") is a mortgage broker. Accepting the factual allegations of the Complaint as true, on September 21, 2007, the parties entered into a "Broker Agreement." Fairway agreed to broker mortgage loans for Regions subject to the representations and warranties contained

in the Broker Agreement. Specifically, pursuant to Paragraph 2 of the Broker Agreement, Fairway represented and warranted to Regions that it would comply with all applicable laws, rules and regulations; that all applications, verifications of deposit, appraisals, and all other disclosures would be provided in accordance with Regions' policies and procedures; and that Fairway would have no knowledge with respect to any loan that would cause Regions to "regard the purchase of the Loan as an unacceptable investment, cause any Loan to become delinquent, or adversely affect the value or marketability of any such Loan."

Fairway further agreed to repurchase mortgage loans that breached any of its representations and warranties. Specifically, pursuant to Paragraph 3 of the Broker Agreement, Fairway agreed that "upon request, it will immediately repurchase from Regions Mortgage any closed loan that is not in compliance with the representations and warranties set forth in Paragraph 2…."

This lawsuit concerns two loans that Fairway brokered through its employee, Robert Mahaney. The borrowers on these two loans were Ivan Grejdieru ("Grejdieru") and Doddie Giles ("Giles").

With regard to the Grejdieru loan, Grejdieru acquired the property at 1932 Smarty Jones Drive, in Waxhaw, North Carolina on December 17, 2007. Grejdieru was the general contractor for the ongoing construction of the house on the property. Fairway and Grejdieru lined up a third party purchaser for the property. That sale fell through and the third party purchaser never closed on the property.

Regions alleges that due to increasing pressure from the developer of the Providence Downs South subdivision for Grejdieru to sell the property, Fairway and Grejdieru agreed that Fairway would obtain refinancing on the property in Grejdieru's name so that Grejdieru could pay the

developer in full. At this time, Fairway allegedly knew through its prior relationship with Grejdieru that he was the general contractor on the property, that he had no intention of occupying the property, that he had no intention of making payments on the refinanced loan, and that certain disclosures made by Grejdieru and Fairway were false.

Regions further alleges that Fairway intentionally went forward and brokered the refinance of the loan despite its knowledge of these facts. Fairway completed the Uniform Residential Loan Application for Grejdieru and had Grejdieru execute it. The loan application, in direct contradiction of the facts known to Fairway, represented that the property would be Grejdieru's primary residence. The loan application further listed Grejdieru's assets, and Fairway provided to Regions a false verification of deposit from SunTrust in order to substantiate some of the alleged assets of Grejdieru. The SunTrust verification of deposit was signed by Vic Gray, also known as Vic Henson. Based on these misrepresentations, Grejdieru was approved for a conventional loan by Regions in the amount of $975,000.00 on May 9, 2008. Fairway received a substantial fee for brokering the loan to Grejdieru.

Grejdieru defaulted on the loan, failing to make a single payment. Grejdieru has never used the property as his primary residence or otherwise occupied the property. Regions alleges that as a result of the default, it was forced to foreclose on the property at a substantial loss.

Fairway also brokered another loan from Regions, on behalf of Giles in the amount of $1,000,000.00. The Giles loan was brokered by Fairway through the same employee, Robert Mahaney, contained a verification of deposit through the same bank (SunTrust Bank, signed again by Vic Gray, also known as Vic Henson), contained identical false representations on the application regarding assets and occupancy, was in the same subdivision and city as the Grejdieru loan, was

3

made in the same time frame as the Grejdieru loan, and was for approximately the same amount as the Grejdieru oan.  Again, Fairway received a substantial commission on the brokerage of this $1,000,000.00 loan.

As was the case with the Grejdieru loan, Giles defaulted on the loan and failed to make a single payment.  Giles never used the property as her primary residence or otherwise occupied the property.  As with the Grejdieru loan, Regions alleges that as a the result of the default, it was forced to foreclose on the property at a substantial loss.

Subsequent to the defaults on both loans, Regions sent a series of letters to Fairway demanding repurchase of the Grejdieru and Giles loans. Fairway refused to repurchase the loans.

On November 9, 2009, Regions filed its Complaint in the Superior Court of Union County, North Carolina, stating claims for breach of contract, negligence, fraud, and fraudulent concealment.

On December 18, 2009, Defendant removed the state court action to the United States District Court for the Western District of North Carolina, alleging the existence of diversity of citizenship subject matter jurisdiction.   Said removal has not been challenged and appears proper.

On December 21, 2009, Defendant filed its Partial Motion to Dismiss.  Defendant contends that Plaintiff's tort claims arise from "identical and indistinguishable facts" from Plaintiff's breach of contract claim.  Additionally, Defendant argues that the negligence claim also fails because North Carolina law recognizes a claim for negligence in a breach of contract context only in certain limited situations, none of which exist here.

Defendant's Motion has been fully briefed and is, therefore, ripe for disposition.

4

## II. DISCUSSION

### A. Standard of Review

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1960 (2009), quoting Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. 129 S. Ct. at 1951. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1951 (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true), citing Twombly, 550 U.S. at 554-55. Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing

5

more than conclusions." Id. at 1950.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 1951. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id., quoting Fed. R. Civ. P. 8(a)(2). In other words, if after taking the complaint's well-pleaded factual allegations as true, a lawful alternative explanation appears a "more likely" cause of the complained of behavior, the claim for relief is not plausible. Id. at 1951-52.

### B. Negligence Claim

It is well settled that under North Carolina law, a breach of contract will rarely support a negligence claim. Indeed, this Court has recently dismissed a negligence claim brought in a breach of contract context. Cleveland Const. Inc. v. Fireman's Fund Ins. Co., ___ F. Supp. 2d ___, ___, 2009 WL 3754232, at *3 (W.D.N.C. Nov. 5, 2009). In his ruling, U.S. District Judge Graham C. Mullen noted that "[o]rdinarily, a breach of contract does not give rise to a [negligence] action by the promisee against the promisor." Id. (quoting Ports Authority v. Roofing Co., 240 S.E.2d 345, 350 (1978)). The few exceptions to this rule are for

> (1) harm that occurs to the person or property of someone other than the promisee, (2) [harm that] occurs to property of the promisee other than the property which was the subject of the contract, or was a personal injury to the promisee, (3) [harm that] was loss of or damage to the promisee's property, which was the subject of the

6

contract, the promisor being charged by law, as a matter of public policy, with the duty to use care in the safeguarding of the property from harm, as in the case of a common carrier, an innkeeper or other bailee, or (4) [harm that] was a willful injury to or a conversion of the property of the promisee, which was the subject of the contract, by the promisor.

Id. (quoting Mason v. Yontz, 102 N.C. App. 817, 81849, 403 S.E.2d 536, 538 (1991)). Where none of those four factors are present, North Carolina courts "acknowledge no negligence claim where all rights and remedies have been set forth in the contractual relationship," Kaleel Builders, Inc. v. Ashby, 161 N.C. App. 34, 42, 587 S.E.2d 470, 476 (2003) ("North Carolina case law on this issue is clear and long standing.")

As Judge Mullen found in Cleveland Contr. Inc., supra, "[n]one of the above exceptions apply in this case. The damages that [Plaintiff] seeks are not for property lost at the hands of [Defendant]. Nor is this a case in which public policy considerations are present." ___ F. Supp. 2d at ___, 2009 WL 3754232, at *3. Plaintiff therefore has failed to state a claim for negligence and Defendant's Motion to Dismiss that claim will be granted.

### C. Fraud and Fraudulent Concealment Claims

In addition to not supporting a negligence claim, in North Carolina a "mere breach of contract" cannot give rise to any other tort claims. Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 346 (4th Cir. 1998) (reversing verdict where tort claims were submitted to jury in a "straight forward contract dispute"). However, North Carolina courts have recognized an "independent tort exception," which requires "something more" than a dispute over the interpretation and performance of the subject contract. Id. at 346-47. The independent tort exception applies when a claim "is identifiable and distinct from the primary breach of contract claim" and the alleged

7

tortious conduct has an "aggravating element such as malice or recklessness." Capital Factors, Inc. v. The Fryday Club, 209 F. Supp. 2d 583, 585 (W.D.N.C. 2002)  In Capital Factors, the Court held that the presence of "distinct circumstances" is crucial to determining whether an independent tort exists. Specifically, the Court asked "whether the claims at issue could really be decided under a contract theory," and decided to allow "tort causes of action if [the] contract theory [was] insufficient to cover the facts." Id.  The Court went on to note that where the defendant alleged in its counterclaims that the plaintiff "deliberately misappropriated funds, failed to credit accounts, and failed to provide information," the independent tort exception applied. Id.  Further, the Court noted that the malice and recklessness in the plaintiff's conduct warranted a foray into tort claims, stating "the alleged conduct here is behavior outside the scope of the contract, and it is ... sound policy to assure that parties do not sacrifice other extra-contractual rights just because they have a contract." Id.; see also Food Lion, LLC v. Schuster Marketing Corp., 382 F. Supp. 2d 793, 800-01 (E.D.N.C. 2005) ("As in Capital Factors, Inc., the allegations in the instant case are not merely assertions that plaintiff failed meet its contractual obligations. Instead, defendant alleges that plaintiff knowingly made false representations upon which defendant relied ... [s]uch alleged behavior goes beyond the scope of the contract.")

Applying these legal principles to the Complaint, which is taken as true at this early stage in the proceeding, it is clear that the facts alleged fall outside the contract between the parties and the independent tort exception applies. Indeed, Plaintiff's fraud claims arise from an alleged scheme of intentional deception specifically designed to induce Plaintiff to loan $1,975,000.00 in the aggregate to Grejdieru and Giles, for the sole purpose of enabling Defendant to collect its commission. Although the Court has formed no opinion about the ultimate merits of Plaintiff's fraud claims, the factual allegations discussed in detail above are sufficient to state claims for relief. Accordingly, Defendant's

Motion to Dismiss those claims will be <u>denied</u>.

### III. <u>ORDER</u>

**NOW THEREFORE, IT IS ORDERED:**

1. Defendant's "Partial Motion to Dismiss ..." (document #3) is **GRANTED IN PART** and **DENIED IN PART**, that is, **GRANTED** as to Plaintiff's negligence claim which is **DISMISSED WITH PREJUDICE**, and **DENIED** in all other respects.

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED, ADJUDGED AND DECREED.**

Signed: February 2, 2010

David S. Cayer
United States Magistrate Judge